# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LYNN WRIDE, | Case No. 1:05-cv-00486-AWI-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| FRESNO COUNTY, et al., | (Doc. 140) |
| Defendants. | OBJECTION DEADLINE: 09/20/13 RESPONSE DEADLINE: 09/27/13 |

**<u>Findings and Recommendations - Defendants' Motion for Summary Judgment</u>**

**I.   Background**

Plaintiff James Lynn Wride ("Plaintiff") filed this civil action on April 13, 2005, and it now proceeds on Plaintiff's fourth amended complaint against the County of Fresno for violation of the Americans with Disabilities Act, 42 U.S.C. § 12132, and against Merle Heggen[1] for negligence in violation of California law. Plaintiff's claims arise from events which occurred when he was incarcerated at the Fresno County Jail between June 1, 2004, and July 29, 2004.

On February 1, 2013, Defendants County of Fresno and Heggen ("Defendants") filed a motion for summary judgment. Plaintiff filed an opposition on February 22, 2013, and

---

[1] Identified as Haagen in the complaint.

Defendants filed a reply on March 6, 2013.[2] The motion has been submitted upon the record without oral argument. Local Rule 230(g).

## II.  Legal Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine

---

[2] Plaintiff filed this action pro se but he is now represented by counsel.

issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial. *Aloe Vera of America, Inc. v. U.S.*, 699 F.3d 1153, 1165 (9th Cir. 2012) (citing *Anderson*, 477 U.S. at 249).

**III.     Discussion**

    **A.     Allegations Set Forth in Fourth Amended Complaint**

Plaintiff alleges that on or around June 1, 2004, he was arrested and transported to the Fresno County Jail. During the course of Plaintiff's arrest, he spat on and threatened the officers. After Plaintiff was placed in a holding cell in the jail, he was repeatedly kicked and punched by deputies and placed face-down on the cell floor. An officer then sat on his lower back and pulled his head and neck back until a distinctive cracking sound was heard, at which time Plaintiff experienced excruciating pain.

Plaintiff was subsequently strapped into a restraint chair, which immobilized him. Plaintiff remained in the restraint chair for four to six hours.

Immediately following these events, Plaintiff was unable to stand on his own and he was taken to the medical unit via wheelchair. X-rays were taken of Plaintiff's back, neck, and shoulder; and he was treated with anti-inflammatory medication for thirty days, after which time the medication was stopped. Plaintiff remained in the medical unit until July 29, 2004, during which time he was unable to walk on his own and he required the use of a wheelchair.

On July 29, 2004, Plaintiff was transported from the medical unit to general population by Defendant Heggen.[3] At the time, Plaintiff had been wheelchair-bound for almost two months and he continued to need a wheelchair because he was unable to walk on his own. Plaintiff told Defendant Heggen he still needed a wheelchair, but Defendant Heggen told him he could not keep the wheelchair in general population. Defendant Heggen took Plaintiff to a general population cell by wheelchair, assigned Plaintiff the middle bunk, and slid Plaintiff out of the wheelchair and onto a seat. The middle bunk was approximately six feet off the floor and Plaintiff told Defendant

---

[3] The decision to transfer Plaintiff from the medical unit to general population was not made by Defendant Heggen.

3

Heggen that his condition prevented him from accessing the bunk. The inmate assigned to the lower bunk offered his bunk to Plaintiff, but Defendant Heggen insisted Plaintiff occupy the middle bunk.

After Defendant Heggen left, Plaintiff's two cellmates made his bed up for him and assisted him onto his bunk. Approximately four to five hours later, Plaintiff fell from the bunk to the concrete floor while trying to descend to use the toilet, and he broke his leg in five places.

Plaintiff was taken to an outside hospital and provided with a temporary cast. On August 13, 2004, Plaintiff underwent surgery, during which a thirteen-inch unreamed titanium tibial nail was inserted into the tibial shaft to hold the pieces in place. Plaintiff remained in the jail's infirmary until he was committed to the custody of the California Department of Corrections and Rehabilitation, and he required the use of a wheelchair until approximately May 10, 2007.

Plaintiff's Americans with Disabilities Act ("ADA") claim arises from his assignment to an inaccessible middle bunk and from the deprivation of a wheelchair necessary for him to be able to leave his cell; and his negligence claim arises from Defendant Heggen's refusal to assign him to an accessible bunk, which led him to fall and injure himself.

**B.  ADA Claim**

    **1.  Legal Standard**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to the services, programs, and activities provided for inmates by jails and prisons. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 208-13, 118 S.Ct. 1952 (1998); *Simmons v. Navajo County*, 609 F.3d 1011, 1021-22 (9th Cir. 2010); *Pierce v. County of Orange*, 526 F.3d 1190, 1214-15 (9th Cir. 2008). "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his]

///

disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002); *accord Simmons*, 609 F.3d at 1021; *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

### 2. **Qualified Individual with a Disability**

#### a. **Parties' Positions**

Defendants first argue that Plaintiff was not a qualified individual with a disability when he was housed in the general population cell on July 29, 2004. Defendants contend that the nature and severity of Plaintiff's impairment was not great, and there is no indication that his injury was permanent and/or chronic. Defendants contend that the x-ray of Plaintiff's spine was negative, and he took ibuprofen for only a short time. Furthermore, Plaintiff had only been injured for two months, and there is no evidence suggesting medical staff believed his impairment was going to be long term. Defendants contend that because Plaintiff did not have a permanent, chronic impairment, he may not maintain suit under the ADA.

Plaintiff argues that his inability to stand, walk, jump, climb, bend over, or care for himself between June 1, 2004, and July 29, 2004, is sufficient defeat Defendants' motion for summary judgment; and that Defendants' assertion his condition was not permanent or chronic reaches too far, as temporary disabilities are not automatically excluded from coverage under the ADA.

#### b. **Findings**

As an initial matter, the ADA Amendments Act of 2008 ("ADAA") was effective January 1, 2009, and 29 C.F.R. § 1630.2(j), which is relevant to the Court's findings, was amended as a result. However, the Court must look to the law as it was at the time of the events in question. *Johnson v. Bd. of Trs. of the Boundary Cnty. Sch. Dis. No. 101*, 666 F.3d 561, 564 n.2 (9th Cir. 2011) (citing *Becerril v. Pima Cnty. Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009)) (ADAA does not apply retroactively).

Under Title II, a qualified individual with a disability is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2); *Pierce*, 526 F.3d at

1214 n.24. "The term 'disability' means . . . a physical or mental impairment that substantially limits one or more of the major life activities of [the] individual."[4] 42 U.S.C. § 12102(2)(A). The term "substantially limits" was defined in 2004 as follows:

> (j) Substantially limits—
>
> (1) The term substantially limits means:
>
> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.
>
> (2) The following factors should be considered in determining whether an individual is substantially limited in a major life activity:
>
> (i) The nature and severity of the impairment;
>
> (ii) The duration or expected duration of the impairment; and
>
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j).

In this case, Plaintiff has submitted evidence that prior to June 1, 2004, he had no back injuries, had never made a worker's comp claim, and had never been out on disability. (Wride Depo., 17:3-14.) On June 1, 2004, following Plaintiff's arrest, he was beaten in his cell at the jail by officers and then placed in a restraint chair for four to six hours. (Wride Dec., ¶¶2-3.) When Plaintiff was released from the restraint chair, he complained of severe back pain. (*Id.*, ¶4.) Plaintiff was taken to another cell, where he waited for a wheelchair. (*Id.*, ¶5.) Plaintiff was assisted into the wheelchair by staff and taken to the medical floor, where he was housed from June 1, 2004, to July 29, 2004. (*Id.*, ¶¶5, 7.) From June 1, 2004, to July 29, 2004, Plaintiff was unable to stand, walk, jump, bend over, or care for himself, and his ability to climb was severely limited by his inability to rely on his leg strength. (*Id.*, ¶8.) Plaintiff does not recall standing

---

[4] The term disability may also mean a record of such an impairment or being regarded as having such an impairment, 42 U.S.C. § 12102(2)(B), (C) (quotation marks omitted), but there is neither argument nor evidence that Plaintiff was disabled under those subsections, *Coons v. Secretary of the U.S. Dept. of the Treasury*, 383 F.3d 879, 886 (9th Cir. 2004).

6

during this period of time because he had either the use of a wheelchair or staff assistance, and he was unable to walk without great difficulty and severe pain. (*Id.*, ¶9.)

Standing, walking, and caring for oneself are unquestionably major life activities. *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 197, 122 S.Ct. 681 (2002) (abrogated by ADAA). The question is whether Plaintiff's back injury substantially limited those activities permanently or long term. 29 C.F.R. § 1630.2(j)(2); *Toyota Motor Mfg.*, 534 U.S. at 198.

Plaintiff was injured as a result of the beating on June 1, 2004, and he was reassigned to general population on July 29, 2004, at which time he fell descending from his bunk and sustained a compound fracture of his leg. While the alleged cause of Plaintiff's back injury has been identified, the parties have cited to no evidence identifying the diagnosis or prognosis. The evidence on the nature of Plaintiff's injury is limited to an x-ray which was negative for an acute fracture; the provision of anti-inflammatory medication for thirty days; and a doctor's order specifying lower bunk/no stairs housing in general population.[5]

The Court is cognizant that comparative or medical evidence is not necessarily required to demonstrate the existence of an impairment, *Rohr v. Salt River Agricultural Improvement and Power District*, 555 F.3d 850, 858-59 (9th Cir. 2009) (citing *Head v. Glacier Northwest Inc.*, 413 F.3d 1053, 1058 (9th Cir. 2005)), but mere evidence of an impairment does not suffice to establish the existence of a disability under the ADA, *Toyota Motor Mfg.*, 534 U.S. at 198. Crediting Plaintiff's evidence in the light most favorable to him, the inability to walk, stand, or care for himself without assistance or the use of a wheelchair evidences the existence of an impairment which is severe, but there is no evidence in the record regarding Plaintiff's diagnosis or prognosis, in particular the expected duration of the condition or whether it was permanent or long term versus temporary. *See Gribben v. United Parcel Service, Inc.,* 528 F.3d 1166, 1168 (9th Cir. 2008) (dilated cardiomyopathy); *Head*, 413 F.3d at 1057 (depression or bipolar disorder); *Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (temporary psychological impairment of approximately four months with no residual effects not of sufficient duration to qualify as a disability under the ADA).

---

[5] Schmidt Dec., Doc. 151-6, p. 9.

7

The result may well have been different had these events occurred more recently, but the Court is constrained to evaluate Plaintiff's ADA claim based on the law in 2004, *Johnson*, 666 F.3d at 564 n.2; *Becerril,* 587 F.3d at 1164, and the record is devoid of any evidence that Plaintiff's back injury was permanent or long term, s*ee Toyota Motor Mfg.*, 534 U.S. at 198 (impairment's impact must be permanent or long term); *Sanders*, 91 F.3d at 1354 n.2 ("[A] person may be 'disabled' in the ordinary usage sense, or even of purposes of receiving disability benefits from the government, yet still not be 'disabled' under the ADA," and "[t]he converse may sometimes be true as well."). Therefore, the Court finds that Plaintiff has not raised a triable issue of fact as to whether, on July 29, 2004, he was a qualified individual with a disability due to the back injury he sustained on June 1, 2004. Defendant County of Fresno is entitled to judgment as a matter of law on Plaintiff's ADA claim, and in light of this finding, the Court does not reach Defendants' argument that there is no evidence of intentional discrimination.

**C.** **Negligence Claim**

**1.** **Claim Presentation Requirement**

The Government Claims Act requires that a tort claim for damages against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board ("the board") no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905, 910, 911.2, 950.2, 950.6. The board has forty-five days to act on a claim, or an application for leave to file a late claim; and absent an extension by agreement, if the board fails to act within forty-five days, the claim is deemed rejected, or the application is deemed denied, on the last day of the prescribed period. Cal. Gov't Code §§ 911.6, 912.4. Presentation of a written claim and action on or rejection of the claim by the board are conditions precedent to suit. Cal. Gov't Code §§ 945.4, 950.6; *Shirk v. Vista Unified Sch. Dist.*, 42 Cal.4th 201, 208-09 (Cal. 2007); *State v. Superior Court of Kings Cnty. (Bodde)*, 32 Cal.4th 1234, 1239, 90 P.3d 116, 13 Cal.Rptr.3d 534 (Cal. 2004); *Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). Suit must be commenced not later than six months after the date the written notice is deposited in the mail, Cal. Gov't Code § 945.6(a)(1) (quotation marks omitted); *Clarke v. Upton*,

703 F.Supp.2d 1037, 1043 (E.D. Cal. 2010); *Baines Pickwick Ltd. v. City of Los Angeles*, 72 Cal.App.4th 298, 303 (Cal. Ct. App. 1999), and if written notice is not given, suit must be commenced within two years from accrual, Cal. Gov't Code § 945.6; *Baines Pickwick Ltd.*, 72 Cal.App.4th at 303.

### 2. <u>Sequence of Events</u>

Plaintiff submitted an initial claim to the County dated January 16, 2005. (Doc. 146, Meadors Dec., Ex. A.) The claim bears a County of Fresno stamp dated January 21, 2005, and a Risk Management stamp dated January 24, 2005. (*Id.*) The County subsequently described the claim as received on January 19, 2005.[6] (*Id.*, Ex. B.) The claim was assigned number 7547, and Plaintiff was informed in a letter dated February 2, 2005, that his claim lacked the following sufficient information: the date of loss of the alleged beating and the dollar amount of the claim. (*Id.*) Plaintiff submitted a response he dated February 4, 2005, and which was stamped received by Risk Management on February 14, 2005. (*Id.*, Ex. C.) In a letter dated February 18, 2005, the County returned the claim presented by Plaintiff on January 19, 2005, because it was untimely. (*Id.*, Ex. D.) Plaintiff was informed that no action was taken on his claim due its untimeliness and his only recourse was to apply for leave to present a late claim. (*Id.*) The date of loss identified in the letter was "[a]ll claims prior to 07/19/2004." (*Id.*)

Plaintiff submitted another claim, which was signed and dated February 28, 2005. (*Id.*, Ex. E.) The claim was presented to the County on March 2, 2005, received by the County on March 3, 2005, and received by Risk Management on March 4, 2005. (*Id.*)

On March 20, 2005, Plaintiff submitted an application for leave to file a late claim/claim. (*Id.*, Ex. F.) The application with the claim was received by the County on March 28, 2005, and received by Risk Management on March 30, 2005. (*Id.*)

Plaintiff filed this lawsuit on April 13, 2005.[7] (Doc. 1.)

On April 26, 2005, the Board of Supervisors rejected Plaintiff's claim, identified as claim number 7547 presented on January 19, 2005. (Meadors Dec., Ex. G.)

---

[6] This may have been the date the claim was postmarked. Cal. Gov't Code § 915(a)(2).

[7] The complaint was dated April 12, 2005.

9

On June 7, 2005, the Board of Supervisors denied Plaintiff's application for leave to file a late claim, identified as claim number 7547 presented on January 19, 2005. (*Id.*, Ex. H.)

### 3. <u>Parties' Positions</u>

Defendants argue that Plaintiff's first claim, presented on January 19, 2005, and amended on February 14, 2005, did not fulfill the claim presentation requirements because it did not provide notice of the facts underlying his negligence claim against Defendant Heggen. Defendants argue that while Plaintiff's second claim, presented on March 3, 2005, set forth facts regarding his negligence claim against Defendant Heggen, Plaintiff recognized it was untimely and submitted an application for leave to present the late claim on March 28, 2005. Defendants argue that it was denied by operation of law on May 12, 2005, and subsequently considered and rejected by the Board on June 14, 2005. By then, Plaintiff had filed this action and he failed to petition for relief, despite having been placed on notice that he was required to do so.

Plaintiff argues that he submitted his claim on January 19, 2005, and submitted additional information in response to the County's letter of insufficiency on February 4, 2005. Plaintiff then argues that on February 18, 2005, the County partitioned his claim regarding the incident of force and denied it as untimely, and allowed the claim regarding his broken leg to proceed. Plaintiff then submitted additional information regarding the claim on February 28, 2005, which was denied by the County on April 26, 2005.

In reply, Defendants assert that Plaintiff raises arguments not pled in his complaint. Defendants further argue that there is no basis for Plaintiff's conclusion that his second claim presented on March 3, 2005, relates back to his first claim presented on January 19, 2005.

### 4. <u>Findings</u>

#### a. <u>Operative Claim</u>

The Court agrees that the initial claim presented on January 19, 2005, did not suffice to place the County on notice of Plaintiff's negligence claim against Defendant Heggen arising from events on July 29, 2004. Cal Gov't Code § 910; *Stockett v. Ass'n of California Water Agencies Joint Powers Ins. Auth.*, 34 Cal.4th 441, 446-47, 99 P.3d 500, 20 Cal.Rptr.3d 176 (Cal. 2004). Although Plaintiff identified July 29, 2004, as the date he broke his leg, the claim was devoid of

any facts which would place the County on notice that Plaintiff's broken leg resulted from actions or omissions of county employees on July 29, 2004. Cal Gov't Code § 910; *Stockett*, 34 Cal.4th at 446-47 (claim must fairly describe what the entity is alleged to have done).

However, Plaintiff presented another claim on March 2, 2005, which was received by the County and which placed the County on notice of Plaintiff's claim against Defendant Heggen arising out of the injury to his leg on July 29, 2004.[8] "A claim may be amended at any time before the expiration of the period designated in Section 911.2 or before final action thereon is taken by the board, whichever is later, if the claim as amended relates to the same transaction or occurrence which gave rise to the original claim." Cal Gov't Code § 910.6(a). Here, the occurrence at issue in the original (first) claim was the incident of force on June 1, 2004, the six month period in which to file a claim under section 911.2 expired in January 2005, and final action was taken on the claim on February 18, 2005. *Id.* Thus, by the terms of section 910.6(a), the claim presented on March 2, 2005, was not, as Plaintiff argues, an amended claim. Cal Gov't Code § 910.6(a); *DiCampli-Mintz v. County of Santa Clara*, 55 Cal.4th 983, 289 P.3d 884, 150 Cal.Rptr.3d 111 (Cal. 2012) (courts should adhere to the plain language of the statute).

However, neither is the Court persuaded by Defendants' position that the second claim on March 2, 2005, was somehow subsumed by an application for leave to file a late claim and a claim presented twenty-five days later, on March 28, 2005.

Plaintiff's second claim of March 2, 2005, arising from the incident with Defendant Heggen which led to Plaintiff's broken leg on July 29, 2004, was presented to the board outside of the six month limitation period. Cal Gov't Code § 911.2. When a claim is presented outside of the six month limitation period without an application to present a late claim, as occurred here, "the board or other person designated by it may, at any time within 45 days after the claim is

---

[8] Tracy Meadors, Personnel Services Manager for the Risk Management Division of the Personnel Services Department, attests that the claim was presented on March 2, 2005. (Meadors Dec., ¶6.) Although Plaintiff represents in his statement of undisputed facts that he mailed the claim on February 28, 2005, the evidence he cites in support of this fact is Tracy Meador's declaration, which states that the claim was presented on March 2, 2005. (Doc. 153, Plaintiff's Undisputed Fact 39.) Further, in Plaintiff's response to Defendants' statement of undisputed facts, Plaintiff does not dispute fact 35, that Plaintiff presented his second claim on March 3, 2005. Based on Tracy Meadors' declaration and in the absence of any other evidence regarding the date of mailing, the Court accepts March 2, 2005, as the date the claim was presented. Cal. Gov't Code § 915(a)(2).

presented, give written notice to the person presenting the claim that the claim was not filed timely and that it is being returned without further action." Cal Gov't Code § 911.3(a). Subject to an exception not relevant here, "[a]ny defense as to the time limit for presenting a claim described in subdivision (a) is waived by the failure to give the notice set forth in subdivision (a) within 45 days after the claim is presented. . . ." Cal Gov't Code § 911.3(b).

Given that Plaintiff's untimely second claim was not accompanied by an application for leave to file a late claim, section 911.3 was necessarily applicable, and the board failed to notify Plaintiff within forty-five days that his claim was not timely and was being returned without further action.[9] Cal Gov't Code § 911.3(a). As a result, any defense as to the timeliness of that claim was waived. Cal Gov't Code § 911.3(b). The board thereafter rejected the claim on April 26, 2005.

While Defendants argue that the April 26, 2005, rejection was the board's action on Plaintiff's first claim (January 19, 2005), the Court finds that this interpretation is not supportable by the applicable code sections and the relevant documents. Plaintiff's first claim, which placed the County on notice as to the incident of excessive force on June 1, 2004, was untimely filed and, following an amendment as to the date of incident and damages claimed, it was rejected as untimely by letter dated February 18, 2005, in accordance with section 911.3(a). The letter informed Plaintiff that no action was taken on his claim and it advised him that his only recourse was to file an application for leave to file a late claim. Plaintiff's first claim concerned the incident of excessive force on June 1, 2004, and other than identifying the date Plaintiff broke his leg, it did not address the incident of negligence on July 29, 2004. *See Sofranek v. Merced County*, 146 Cal.App.4th 1238, 1247, 53 Cal.Rptr.3d 426 (Cal. Ct. App. 2007) (where second claim relates to the same underlying facts and amounts to no more than an attempt to amend the original claim by adding more details about the incident, the amendment relates back to the date the original claim was filed). Nothing in the rejection letter suggested that Plaintiff's first claim had been partitioned, with the excessive force claim occurring on June 1, 2004, being rejected as untimely and a claim for negligence arising from the event on July 29, 2004, continuing on for

---
[9] The forty-fifth day was April 16, 2005.

12

consideration by the board. In addition, the timing of events lends further support for this interpretation of events, as the April 26, 2005, decision came only fifty-three days after the presentation of Plaintiff's second claim versus ninety-seven days after the presentation of Plaintiff's first claim; and in fact, the board's action in *denying* Plaintiff's second claim rather than merely rejecting it as untimely was compelled by its failure under the statute to provide Plaintiff with written notice within forty-five days that the claim was rejected as untimely. Cal. Gov't Code § 911.3.

Accordingly, the Court finds that Plaintiff's second claim placing the County on notice as to his negligence claim against Defendant Heggen was deemed denied by operation of law on April 16, 2005, Cal. Gov't Code § 912.4(c), and the issue is whether Plaintiff's negligence claim is barred by the fact that he filed suit prematurely on April 13, 2005, Cal. Gov't Code §§ 945.4, 950.6.

### b. Filing of Suit Prior to Board Action on Operative Claim

Section 945.4 of the Government Claims Act provides that "[n]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with Chapter 1 (commencing with Section 900) and Chapter 2 (commencing with Section 910) of Part 3 of this division *until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board*, in accordance with Chapters 1 and 2 of Part 3 of this division," Cal. Gov't Code § 945.4 (emphasis added), and Section 950.6 provides that "[w]hen a written claim for money or damages for injury has been presented to the employing public entity: (a) a cause of action for such injury may not be maintained against the public employee or former public employee whose act or omission caused such injury *until the claim has been rejected, or has been deemed to have been rejected, in whole or in part by the public entity*," Cal. Gov't Code § 950.6 (emphasis added). Here, Plaintiff presented the operative claim to the County on March 2, 2005, but he filed suit before the expiration of the forty-five day period within which either the board must act or the claim is deemed to have been rejected based on the board's failure to act. Cal. Gov't Code § 912.4.

In December 2012, the California Supreme Court interpreted section 915(a) of the Government Claims Act. *DiCampli-Mintz*, 55 Cal.4th at 992 (citations omitted). While that specific provision, which deals with notice to the entity, is not at issue in this case, the California Supreme Court held that the appellate court erred when it failed to adhere to the plain language of section 915(a) and instead found substantial compliance with the statute, and the principles elucidated by the Court are relevant and binding.

In *DiCampli*, the Court stated:

> Even if the public entity has actual knowledge of facts that might support a claim, the claims statute still must be satisfied. The filing of a claim is a condition precedent to the maintenance of any cause of action against the public entity and is therefore an *element* that a plaintiff is required to prove in order to prevail.
>
> A goal of the Government Claims Act is to eliminate confusion and uncertainty resulting from different claims procedures. [T]he purpose of the claims statute is not to prevent surprise, but to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. It is well-settled that claims statutes must be satisfied even in the face of the public entity's actual knowledge of the circumstances surrounding the claim. The claims statutes also enable the public entity to engage in fiscal planning for potential liabilities in the future.
>
> Moreover, the intent of the Government Claims Act is not to expand the rights of plaintiffs against government entities. Rather, the intent of the act is to confine potential governmental liability to rigidly delineated circumstances.

*DiCampli-Mintz*, 55 Cal.4th at 990-91 (internal quotation marks and citations omitted) (emphasis in original).

In construing any statute, courts first look to its language, and words used in a statute should be given the meaning they bear in ordinary use. *DiCampli-Mintz*, 55 Cal.4th at 992 (quotation marks and citation omitted). If the language is clear and unambiguous, there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature. *Id.* (quotation marks and citation omitted). A court may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used; and courts must assume that the Legislature knew how to create an exception if it wished to do so. *Id.* (quotation marks and citation omitted).

The language of the sections applicable here is clear and unambiguous: the government has forty-five days to act on a claim and either action on the claim within forty-five days or the

14

expiration of the forty-five day time period without action is a condition precedent to maintaining a suit against the entity or the entity's employee. The forty-five day period had not yet expired when Plaintiff filed suit. The Court declines to carve out an exception based on substantial compliance, as to do so would be in contravention of the plain language of the statute.[10] *DiCampli-Mintz*, 55 Cal.4th at 992. The Court notes that strict adherence to the statutory language comports with the intent of the Government Claims Act to confine rather than expand governmental liability. *Id.* at 991. Accordingly, the Court finds that Plaintiff filed suit prior to complying with the Government Claims Act, thereby barring his negligence claim.

## IV. <u>Conclusion and Recommendations</u>

Based on the foregoing, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on February 1, 2013, be GRANTED, thus concluding this action in its entirety.

///

---

[10] At the pleading stage, the Court granted Plaintiff's motion for leave to file a third amended complaint adding the negligence claim. (Doc. 105.) The Court did not find that Plaintiff complied with the Government Claims Act nor did it find that compliance with the Act was excused. Rather, the Court noted that Plaintiff filed suit prematurely, but found that in light of the potential applicability of substantial compliance, it declined to resolve the issue at the pleading stage on a motion to amend. (*Id.*) The order, however, was issued prior to the decision in *DiCampli-Mintz*.

The Court acknowledges prior cases addressing the issue of compliance where the plaintiff filed suit before waiting for the expiration of the deadline for the government to act or for the claim to be deemed rejected based on the government's failure to act. For example, in *Cory v. City of Huntington Beach*, 43 Cal.App.3d 131, 135-36, 117 Cal.Rptr. 475 (Cal. Ct. App. 1974), the plaintiff filed suit two days after filing his claim for damages with the city and the California Court of Appeal declined to bar the claim on that "highly technical" basis, finding that by the time the city answered the complaint, it had received every benefit of the statute. However, *Cory* relied upon *Radar v. Rogers*, 49 Cal.2d 243, 317 P.2d 17 (1957). *Radar* was decided prior to the enactment of the statutes at issue here and it interpreted a provision of the probate code. Further, at that time *Cory* was decided, compliance with the Government Claims Act was not viewed by courts as a part of the cause of action. *Cory*, 43 Cal.App.3d at 134-35.

Subsequently, in *Bodde*, the California Supreme Court acknowledged, seemingly with approval, cases in which the plaintiffs were allowed to proceed despite having prematurely filed suit prior to action by the entity on the claim. *Bodde*, 32 Cal.4th at 1243-44. Nevertheless, the holding in *Bodde* was limited to determining that the failure to allege compliance with the Government Claims Act or circumstances excusing compliance subjects a complaint to dismissal for failure to state facts sufficient to constitute a cause of action. *Bodde*, 32 Cal.4th at 1245. Furthermore, the decision in *Bodde* was issued in 2004 and in 2012, the California Supreme Court rejected the California Court of Appeal's application of substantial compliance to the procedural requirement regarding claim presentation in *DiCampli-Mintz*. *See Edgerly v. City and County of San Francisco*, 713 F.3d 976, 982 (9th Cir. 2013) (the court must apply the law as it believes the California Supreme Court would apply it). The recent decision in *DiCampli-Mintz* is relevant to the analysis of this issue, and given that the plain language of the statutory sections at issue here is clear, the Court heeds the admonition the Legislature knew how to create an exception to the conditions which must be met to bring suit against an entity or its employees, had it wished to do so. *DiCampli-Minttz*, 55 Cal.4th at 992.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). The parties may file Objections with the Court on or before **September 20, 2013**. A Response to the Objections, if any, must be filed on or before **September 27, 2013**. The failure to file Objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 12, 2013**          **/s/ Sheila K. Oberto**
UNITED STATES MAGISTRATE JUDGE